# EXHIBIT C

**Mark Guest Declaration**



# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MY JOB MATCHER, INC., *et al.*,[1] | Case No. 25-11280 (KBO) |
| Debtors. | (Jointly Administered) |
| | Re: Docket No. 24 |

## DECLARATION OF MARK GUEST IN SUPPORT OF THE DEBTORS' SALE MOTION AND SALE OF THE DEBTORS' ASSETS

I, Mark Guest, pursuant to 28 U.S.C. § 1764, hereby declare and state:

1.  I am a current employee of the Debtors and have authority to submit this declaration (the "Declaration").

2.  I submit this Declaration in support of the *Debtors' Motion for Entry of (A) An Order (I) Scheduling A Hearing on the Approval of the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other Than Assumed Liabilities And Permitted Encumbrances, And The Assumption and Assignment of Certain Executory Contracts And Unexpired Leases, (II) Approving Certain Bidding Procedures and Assumption And Assignment Procedures, And The Form And Manner Of Notice Thereof, and (III) Granting Related Relief; and (B) An Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of All or Substantially All of The Debtors' Assets Free and Clear of All Encumbrances Other Than Assumed Liabilities And Permitted Encumbrances, (III) Authorizing The Assumption and*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: My Job Matcher, Inc. (9880); Job.com-HV, Inc. (DE) (5873); Job.com-HV, Inc. (FL) (5873); Job.com-Fortus, Inc. (6145); Job.com-Endevis, Inc. (1956); Job.com-QCI, Inc. (4364); Princeton One-Job.com, Inc. (4752); and Princeton Search L.L.C. (6163). For purposes of these chapter 11 cases, the Debtors' service address is 1743 Sidewinder Drive, 1st Floor, Park City, Utah 84060.

*Assignment of Certain Executory Contracts and Unexpired Leases, And (IV) Granting Related Relief* [Docket No. 24] (the "Sale Motion").[2]

3. Unless otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge, experience while employed by the Debtors and its related affiliates, my discussions with previous management and other professionals of the Debtors, or other interested parties, my review of relevant documents, or my opinion based upon my experience, knowledge, and information concerning the Debtors' operations and financial affairs.

## QUALIFICATIONS

4. I have been employed within the Debtors' group of companies with parent company, MJM Tech Ltd. ("MJM Tech"), since August 1, 2016. I was hired in the UK to lead the expansion of MJM Tech into the United States among other efforts. In March 2023, my role transferred from MJM Tech in the UK to the Debtor, My Job Matcher Inc., to perform work for MJM Tech's subsidiaries in the United States. I remain officially employed by the Debtor, My Job Matcher Inc., as of the date of the filing of the Declaration.

5. I served as the MJM Tech's group Chief Operating Officer from May 2018 until September 2020, when Bill Klehm joined the Debtor My Job Matcher Inc., and I transitioned into my current role as the group's Chief Operating Development Officer. Based on my previous and current roles, I have firsthand knowledge about some of the Debtors' finances, negotiations regarding certain asset purchase agreements or stock purchase via transactions, corporate structure, and the acquisition of certain intellectual property assets by My Job Matcher, Inc. and MJM Tech from third parties.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Sale Motion.

## TALENTING ACQUISITION

6. As outlined in the *Declaration of Robert Corliss in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), My Job Matcher, Inc. is a wholly owned subsidiary of MJM Tech.

7. In September 2017, My Job Matcher Inc. acquired the assets of Virginia Web Properties, LLC including the domain and job board "Job.com" through a targeted acquisition. After acquiring the domain name and job board of Job.com, MJM Tech began to focus expanding its operations into the United States and other countries, although the company's expansion beyond the U.S. never came to fruition.

8. ███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

9. ███████████████████████████████████████
███████████████████████████████████████
███████ is attached hereto as **Exhibit 1**. ████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████



12. ██████████████████████████████████
██████████████████████████████████
████████████████

**TEAMAI TRANSACTION**

13. ██████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
████████████████████

14. ████████████████████████████████
██████████████████████████████████
████████████████ is attached hereto as **Exhibit 2**. ████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████

15. ████████████████████████████ Debtor My Job Matcher, Inc. was represented by certain attorneys from Lucosky Brookman LLP ("Lucosky"). It is my understanding that while counsel from Lucosky purported to represented both Debtor, My Job Matcher Inc., and MJM Tech, all invoices were sent to and paid by My Job Matcher, Inc. *See* **Exhibit 3**.

16. █████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████

17. █████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████

18.  Additionally, through SOJA, My Job Matcher Inc. also acquired a loan from Premier Commission, LLC via a promissory note dated September 7, 2023, as further amended from time to time, for the specific purpose of ███████████ See **Exhibit 4**.

19.  ████████████████████ all cash, accounts receivable, long-term debt and goodwill were immediately placed on the books and records of the Debtor, My Job Matcher, Inc. See **Exhibit 5**.

20. █████████████████████████████████████████
████████████████████████████████████████████
█████████████████████ Also, at all relevant times since 2020, MJM Tech was operated as a holding company that raised and contributed capital and assets to be operated by the Debtor My Job Matcher Inc., the operating company.

21.  As noted above, immediately following ████████████████ the assets of ███████ and liabilities of █████ were inserted as assets and liabilities of the Debtor, My Job Matcher, Inc. Less than two weeks after the ████████████ on or about October 3, 2023, the corporate records were amended to reflect that Team.AI was now a "child" of Debtor, My Job Matcher, Inc. which was in turn, a child of MJM Tech. See **Exhibit 6**. Later, in June 2024, when

TeamAI's name was changed to Job.com Tech, the records of the debtors were then updated to show Job.com Tech as being under the Debtor, My Job Matcher, Inc. See **Exhibit 7**.

22. Likewise, simultaneously ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ certain former TeamAI individuals executed agreements with Debtor entities to provide services to further develop and refine the intellectual property ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Among those individuals retained by the Debtors were Erin Wilson and ▮▮▮▮▮▮▮.

23. On September 20, 2023 – the date of the TeamAI Transaction, Erin Wilson and Debtor, Princeton One, LLC, a subsidiary of Debtor Princeton One – Job.com, which is itself a subsidiary of My Job Matcher Inc., entered into that certain Employment Agreement of Erin Wilson (the "Wilson Employment Agreement"). I was personally involved in the execution and negotiation of the Wilson Employment Agreement and am familiar with the provisions found therein. Attached hereto as **Exhibit 8**, is a true and accurate copy of the Wilson Employment Agreement.

24. With respect to ownership of intellectual property, the Wilson Employment Agreement states that:

> 6. **Inventions and Creations Belong to Employer**.
>
> a. Any and all inventions, discoveries, improvements or creations (collectively, "Creations") which Employee has conceived or made or may conceive or make during the Employment Period in any way, directly or indirectly, connected with Employer's business shall be the sole and exclusive property of Employer. Employee agrees that all copyrightable works created by Employee or under Employer's direction in connection with Employer's business are *"works made for hire" and shall be the sole and complete property of Employer and that any and all copyrights to such works shall belong to Employer. To the extent any of the works described in the preceding sentence are not deemed to be "works made for hire," Employee hereby assigns all proprietary rights, including copyright, in these works to Employer without further compensation.*
>
> b. *Employee further agrees to (i) disclose promptly to Employer all such Creations which Employee has made or may make solely, jointly or commonly with*

*others during the period of employment to the extent connected with Employer's business, (ii) assign all such Creations to Employer*, and (iii) execute and sign any and all applications, assignments or other instruments which Employer may deem necessary in order to enable Employer, at Employer's expense, to apply for, prosecute and obtain copyrights, patents or other proprietary rights in the United States and foreign countries or in order to transfer to Employer all right, title and interest in said Creations.

Wilson Employment Agreement ¶ 6 (emphasis added).

25. Furthermore, Mr. Wilson willingly executed and entered into such agreement having been afforded the opportunity to review and negotiate the terms listed therein. I believe that such provision of the Wilson Employment Agreement unconditionally assigns any and all intellectual property created or developed by Mr. Wilson pursuant to the Wilson Employment Agreement to Debtor, Princeton One, LLC.

26. Also on September 20, 2023, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ I was personally involved in the execution and negotiation of the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and am familiar with the provisions found therein. A true and accurate copy of the ▇▇▇▇▇▇▇▇▇▇▇▇ is attached hereto as **Exhibit 9**.

27. In relevant part, the ▇▇▇▇▇▇▇▇▇▇▇▇ states:





▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ¶ 6 (emphasis added).

28. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Messrs ▓▓▓ and Wilson, and all subcontractors who continued to develop the technology ▓▓▓▓▓▓▓▓▓▓ invoiced one of more of the Debtors for their services. Based on those invoices, it is my understanding that all payments to employees and contractors who engaged in ▓▓▓▓▓▓ development of the TeamAI technology were remitted by a Debtor. *See* **Exhibit 10**.

29. Additionally, Debtor's website, www.job.com, describes the Team.AI technology as Job.com's technology platform. The job.com trademark and the www.job.com website at all relevant times were owned by Debtor My Job Matcher, Inc.

### STATEMENTS IN SUPPORT OF THE SALE MOTION

30. As evidenced discussed herein, it is my understanding that ▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓ were conducted using funds that flowed through, or were borrowed by, the Debtor My Job Matcher, Inc.

31. Furthermore, Mr. Wilson and ▓▓▓▓ were specifically enlisted to develop that intellectual property and technology transferred via the ▓▓▓▓▓▓▓▓ Pursuant to the Wilson Employment Agreement and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓, both individuals

and any subcontractors used by either individual were contractually obligated to transfer all intellectual property of Creations (as defined in the respective agreements) to the employer designated under the respective agreement. As the signatory on behalf of each employer, I can attest that each employer is a Debtor in these Chapter 11 cases.

32. Additionally, all wages and invoices related to Mr. Wilson and ▓▓▓▓▓ tenure with the Debtors were paid by one or more of the Debtors, and not the non-debtor parent, MJM Tech.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Date: September 26, 2025

/s/ Mark Guest
Mark Guest