# EXHIBIT H

**Bankruptcy Court Filing by Plaintiff Nov. 6, 2025**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MY JOB MATCHER, INC., et al., | ) | Case No. 25-11280 (KBO) |
| | ) | |
| *Debtors* | ) | |

**Motion of MJM Tech Ltd. Shareholder Earl Takefman for Leave to File Motion for Relief from Sale Order Pursuant to Fed. R. Bankr. P. 9024 and for Sanctions Under Fed. R. Bankr. P. 9011; for Remote Testimony of a United Kingdom-Based Witness and/or Remote Oral Argument Under Fed. R. Bankr. P. 9071; and to <u>Compel Production of Documents Evidencing Transfer of Intellectual Property Ownership</u>**

Earl Takefman ("Movant" or "Takefman"), pro se, a shareholder of MJM Tech Ltd. ("MJM"), a United Kingdom-based entity holding ownership rights in the intellectual property at issue, known as TEAM AI, respectfully files this Motion for Leave to File Motion for Relief from Sale Order Pursuant to Fed. R. Bankr. P. 9024 and for Sanctions Under Fed. R. Bankr. P. 9011 (the "Motion for Relief and Sanctions"); for Remote Testimony of United Kingdom-Based Witness and/or Remote Oral Argument Under Fed. R. Bankr. P. 9071 (the "Remote Participation Motion"); and to Compel Production of Documents Evidencing Transfer of Intellectual Property Ownership (the "Compel Motion"), pursuant to sections 105(a) and 363 of the Bankruptcy Code, 11 U.S.C. §§ 105(a), 363; Fed. R. Bankr. P. 2004, 9011, 9024, 9071; Fed. R. Civ. P. 43(a) (incorporated via Fed. R. Bankr. P. 9071); and the Court's Chambers Procedures (effective January 2024).

In an affidavit filed by Mr. Robert Corliss ("Corliss"), the Chief Executive Officer of the Debtor, he said on page 6, sections 14 and 15:

*"Upon information and belief, following the closing of the Team AI Transaction, non-Debtor affiliate Job.com-Team.ai Inc. transferred ownership and control of the TEAM AI OS to Debtor job.com and certain other Debtors."*

This statement is deliberately untruthful and misleading, cannot be supported and is seemingly a deliberate attempt to mislead the court by indicating that the TEAM AI OS (operating system) and ownership had been transferred by its rightful owner, job.com-Team.ai Inc., a wholly owned subsidiary of MJM, that is not part of the bankruptcy. Mr. Corliss was aware that the asset had not been transferred, prior to his declaration, from a letter sent to him by MJM **(Exhibit B)**.

## I. OPENING STATEMENT – SHOW ME THE MONEY!

The Debtors and their counsel represented to this Honorable Court that they owned the TEAM AI intellectual property and operating system (as confirmed by Mr. Corliss), a $30 million recruitment software asset, without a shred of evidence to confirm their ownership. No deeds. No titles. No bills of sale. No source code. No transfer documents. Nothing. They knew fully well they held no rights, as MJM Tech Ltd., a cash-strapped, undercapitalized UK company that purchased the core IP outright (see Asset Purchase Agreement, **Exhibit A**), sent letters confirming ownership and demanding honesty with the Court on July 16th, 2025 **(Exhibit B)**. Yet, exploiting MJM's inability to afford U.S. counsel at $1,500 per hour, they misled the Court into approving the sale to a stalking horse bidder under the Sale Order, peddling a phantom asset they claimed they owned, based partially upon a declaration of the Debtor's Chief Development Officer, Mark Guest, and Mr. Corliss' declaration. This was no oversight; it was deliberate deception, certified under FRBP 9011, to "steal" what wasn't theirs.

2

The Debtors' claim seems to hinge on a boilerplate employment clause #6 from inventor Erin Wilson's employment agreement that says:

> *"Any and all inventions, discoveries, improvements or creations (collectively, "Creations") which Employee has conceived or made or may conceive or make during the Employment Period in any way, directly or indirectly, connected with Employer's business shall be the sole and exclusive property of Employer."*

But that's like leasing a Ferrari, swapping the tires, topping off the oil, driving it for a year, and then declaring the car is yours. Absurd. Wilson's minor updates? Perhaps those "tires and oil" fall under the clause, which changes are distinguishable. But what about the 'engine', the pre-existing IP MJM paid $30 million for? Untouched and untransferred. Chief Development Officer Mark Guest's declaration twists this to claim the full beast, ignoring UK law's deed requirements and the Debtors' empty hands: No chain of title. No registration. No proof of conveyance. They can't produce it because it never existed.

As a shareholder of MJM (via assignment from previous shareholder Michael Maurizio), Movant has direct standing to correct this record and protect MJM's $30 million investment (**Exhibit A,** Proof of Sale). This potential fraud would void the Sale Order under FRBP 9024 (FRCP 60(b)(3)) and demands sanctions under FRBP 9011. The solution is simple: **Show the Court the money!** Compel the Debtors to produce every document purporting to evidence ownership and watch them fail. Vacate the IP transfer, sanction the misconduct, and restore truth. Movant seeks leave to file a Motion for Relief and Sanctions; remote testimony from MJM's UK director to authenticate deeds; alternatively, remote oral argument; and expedited production of transfer documents.

Respectfully, this Court should not allow this unjust attempt to mislead the Court to stand. Justice demands that no meritorious claim, rooted in clear evidence of fraud, be sacrificed on the altar of procedural rigidity or evidentiary barriers like remote testimony. This is one of those rare cases crying out for judicial flexibility under § 105(a) and FRBP 9071: Where the truth is as evident as the Debtors' empty proof, and the harms of denial (silencing an undercapitalized foreign owner) far outweigh any minimal prejudice, the Court must adapt to expose the deception. Equity requires piercing the veil of convenience, granting remote access ensures the fraud's light shines bright, upholding bankruptcy's sacred duty to seek unvarnished truth over unchecked finality.

## II. INTRODUCTION

1. On July 6, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors continue as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. Movant is a shareholder of MJM, a UK company that acquired full ownership of the intellectual property known as "TEAM AI" software (the "IP Asset") for $30 million on September 20, 2023, via its totally owned affiliate, Job.com-Team.ai Inc. Movant's interest derives from an assignment of shares from Michael Maurizio, a prior MJM shareholder and a significant creditor. As MJM's shareholder, Movant has standing to challenge the fraudulent transfer of the IP Asset in these proceedings, as it directly impairs MJM's property rights and value.

3. The Debtors' Chapter 11 cases resulted in the sale of substantially all assets, including the purported IP Asset, a recruitment evaluation tool invented by Erin Wilson ("Wilson"). The Court

approved the sale to a stalking horse bidder (the "Sale Order") relying on the Debtors' Robert Corliss and Mark Guest and their counsel's false representations of ownership based on Corliss' declaration and Wilson's employment agreement. This was fraudulent: The Debtors and counsel knew MJM owned the core IP pre-employment; post-employment enhancements (e.g., minor updates) do not confer title, akin to "adding tires or oil to a leased car" without owning the vehicle.

4. Despite post-petition letters from MJM notifying the Debtors and counsel of non-ownership, no opposition arose, exploiting MJM's undercapitalization (unable to afford U.S. counsel at $1,500/hour). The Debtors lack the source code (essential for value) and any formal transfer documents, rendering their "title" illusory and unsellable. This fraud on the Court warrants relief from the Sale Order under Fed. R. Bankr. P. 9024 and sanctions under Fed. R. Bankr. P. 9011. Movant seeks leave to file a Motion for Relief and Sanctions to vacate the IP transfer and impose sanctions, if this honorable court allows the requests for remote litigation herein, as the Movant and the UK witness do not have the ability or capital to travel to Delaware.

5. To enable equitable prosecution, Movant requests:

(a) remote testimony from a UK-based MJM representative (the "UK Witness," a director and former employee of the Debtor) to authenticate ownership deeds and refute fraud, and

(b) alternatively, remote oral argument if testimony is denied; and

(c) an order compelling the Debtors to produce any documents evidencing IP ownership or transfer (UK legal deeds/titles), that Corliss relied on in his declaration, as non-production will confirm their misrepresentations to this court.

5

6. No prior application has been made. Notice has been provided via first class mail and email to Debtors' counsel (Jeffrey R. Waxman, Morris James LLP), counsel for the Official Committee of Unsecured Creditors (Shari Heyen, Greenberg Traurig), the U.S. Trustee, and the stalking horse bidder. A hearing is requested on the next available omnibus date.

## II. JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (E), (H), and (O). Venue is proper under 28 U.S.C. § 1408.

## III. FACTS

8. **MJM's Ownership of TEAM AI**: TEAM AI is proprietary software accelerating candidate evaluation for recruiters. Wilson invented it prior to his employment with the Debtor. In September 2023, MJM acquired complete rights for $30 million, including source code and UK-registered IP titles. MJM, struggling and undercapitalized, relied on U.S. counsel's good faith to properly represent the facts to the Court, but faced silence/opposition absence.

9. **Debtors' Fraudulent Claim**: Debtor's petition and sale motion falsely asserted ownership via Wilson's "work-for-hire" clause, and Corliss' declaration, ignoring: (i) MJM's pre-existing title; (ii) UK law mandating formal deeds for transfer (none exist); and (iii) Debtors' possession of neither source code nor knowledge of its location. MJM's letters, sent post-petition and during case, placed CEO Robert Corliss and counsel (Morris James LLP) on actual notice of fraud. Yet, they certified filings under FRBP 9011, misleading the Court and bidder into approving the sale of this asset to the stalking horse bidder

6

10. **Sale and Harm to MJM**: Unchallenged, the Sale Order conveyed the "IP Asset" for diluting MJM's $30 million investment and exposing it to unenforceable U.S. judgments (UK courts can challenge extraterritorial IP rulings). Movant, as MJM shareholder, learned of this fraud post-sale via MJM records, triggering "newly discovered evidence" under FRBP 9024.

11. **Fraud's Analogy and Impact**: Like leasing a car and adding accessories and driving it for one year, Wilson's updates during employment do not divest MJM's title. Debtors hold paper "ownership" without substance, incapable of sale/use. This intentional misrepresentation by knowledgeable counsel/CEO defrauds creditors and the estate.

12. **Pro Se/Remote Necessity**: Florida-based Movant would incur $3,000+ for travel and accommodation for omnibus hearings. A MJM UK Witness faces $5,000+ costs, visa delays (2+ weeks), and unavailability for in-person testimony without MJM hardship.

## IV. ARGUMENT

**A. As MJM Shareholder, Movant Has Standing and Good Cause for Leave to File the Motion for Relief and Sanctions**

13. Movant's share assignment confers direct interest in the IP Asset, granting standing under 11 U.S.C. § 1109(b) to challenge fraudulent sales impairing MJM. FRBP 9024 (FRCP 60(b)) mandates relief for "fraud... misrepresentation, or misconduct" (§ 60(b)(3)) and equitable grounds (§ 60(b)(6)). Fraud voids § 363(m) finality; courts unwind for concealed ownership. *In re One2One Communications, LLC*, 437 B.R. 757, 763 (Bankr. D. Del. 2010) (relief where debtor misrepresented asset title). Here, Debtors' knowing falsehood, despite letters, warrants vacatur. Leave is liberally granted for *pro se* alleging fraud. ***In re Roman Catholic Diocese of Rockville Centre***, No. 20-73435 (Bankr. S.D.N.Y. 2022).

7

14. **Sanctions:** FRBP 9011(b)(3) bars frivolous contentions; (b)(1) prohibits improper purpose. Counsel/CEO's certification despite notice merits fees/costs. *In re Taylor*, 655 F.3d 274, 277 (3d Cir. 2011) (sanctions for "objectively unreasonable" fraud in filings).

**B. Remote Testimony of U.K. Witness is Warranted Under FRBP 9017 and FRCP 43(a)**

15. Federal Rule of Bankruptcy Procedure 9017 incorporates *Federal Rule of Civil Procedure 43(a)*, which authorizes a court to permit contemporaneous remote testimony on a showing of *good cause in compelling circumstances* and with *appropriate safeguards*. The Advisory Committee Notes to Rule 43(a) emphasize that live, in-person testimony remains the preferred mode, but that remote transmission may be justified by unexpected illness, serious travel constraints, or <u>other substantial burdens</u> when the testimony can be effectively tested by cross-examination.

16. Courts have applied this standard flexibly when international or transcontinental witnesses face extraordinary logistical or expense-related obstacles. In *In re Betcorp Ltd.*, 400 B.R. 266, 272 n.4 (Bankr. D. Nev. 2009), the court permitted testimony from witnesses located in Australia, citing both party consent and significant travel burdens. Similarly, *SEC v. Yang*, 2014 WL 1303457 (N.D. Ill. Mar. 31, 2014), approved remote testimony due to medical and logistical issues coupled with the parties' agreement. These cases demonstrate that the combination of (i) substantial international travel burdens (visa and cost constraints), (ii) narrow scope of anticipated testimony (here, authentication of a deed), and (iii) time-sensitive issues such as potential fraud prevention, together constitute compelling circumstances under Rule 43(a). The Federal Judicial Center (FJC) has likewise observed that remoteness may be justified

when "costs of an in-person appearance are disproportionate to the value in dispute or when new issues arise unexpectedly.

17. Accordingly, because appropriate technological safeguards (e.g., secure video feed, oath administered under penalty of perjury, and opportunity for live cross-examination) can preserve evidentiary integrity, permitting a U.K.-based witness to testify remotely satisfies both procedural rules and due process requirements.

**C. Alternatively, Remote Oral Argument is Required to Protect Pro Se access and Efficiency Under FRBP 9014**

18. In contested matters governed by *Federal Rule of Bankruptcy Procedure 9014*, the court must afford each party "reasonable notice and an opportunity to be heard. This procedural guarantee incorporates the equitable principles of *§ 105(a)* of the Bankruptcy Code, which authorize courts to tailor proceedings to ensure fairness and accessibility. The Federal Judicial Center notes that bankruptcy judges may, in their discretion, allow both attorneys and *pro se* parties to appear telephonically or via videoconference, particularly where travel or health burdens would otherwise impede meaningful participation.

19. Remote argument in such circumstances promotes the *expeditious and inexpensive determination* of disputes envisioned by Rule 1001 and Rule 9014. Given the court's authority to manage contested matters efficiently and to accommodate *pro se* litigants, allowing remote oral argument, especially where no witness testimony is needed, ensures adequate access to justice and procedural regularity consistent with federal practice.

**Conclusion**

20. Federal Rules 43(a) and 9017 establish a flexible framework for remote testimony when justified by good cause in compelling circumstances, supported by appropriate safeguards. Likewise, under Rule 9014 and § 105(a), remote oral argument may be required to preserve *pro*

*se* access and judicial efficiency. The requested relief therefore aligns with Federal Rules, case law, and administrative guidance on remote participation.

### D. Compel Production of IP Transfer Documents Under FRBP 2004

21. Movant seeks Rule 2004 exam: All UK deeds/titles/docs evidencing MJM (Job.com-Team.ai Inc)-to-Debtors transfer. **Non-production infers fraud.** *In re USGen New England, Inc.,* 319 B.R. 309, 312 (Bankr. D. Del. 2005) (discovery for ownership disputes). Debtors bear the burden of proof of their ownership.

## V. DECLARATION OF EARL TAKEFMAN

22. Under 28 U.S.C. § 1746, I declare: The facts are true to the best of my knowledge. As MJM shareholder via assignment, I face $3,000 travel hardship; UK Witness unavailable in-person.

## VI. NOTICE AND HEARING

23. Notice served on all parties. New hearing to be scheduled.

WHEREFORE, Movant prays: (1) Leave to file Motion for Relief and Sanctions; (2) Remote testimony, or alt. remote argument; (3) Compel docs within 7 days; (4) Sanctions/fees; (5) Other just relief.

Respectfully submitted this 31st day of October 2025 by:

**/s/ Earl Takefman**

Earl Takefman, Pro Se (as MJM Shareholder)

## CERTIFICATE OF SERVICE

I hereby certify that I served this request via e-mail and first-class mail to counsel for the Debtor, the Debtor, the U.S. Trustee, counsel for the creditors committee, and the Court clerk,

/s/ Earl Takefman

Earl Takefman

## TABLE OF AUTHORITIES

**In re Betcorp Ltd., 400 B.R. 266 (Bankr. D. Nev. 2009)**
https://www.nvb.uscourts.gov/downloads/opinions/bam-08-21594-betcorp.pdf

**In re One2One Communications, LLC, 437 B.R. 757 (Bankr. D. Del. 2010)**
https://www.govinfo.gov/content/pkg/USCOURTS-njb-2_12-bk-27311/pdf/USCOURTS-njb-2_12-bk-27311-2.pdf

**In re Roman Catholic Diocese of Rockville Centre, No. 20-73435 (Bankr. S.D.N.Y. 2022)**
https://www.nysb.uscourts.gov/sites/default/files/opinions/304873_3411_opinion.pdf

**In re Taylor, 655 F.3d 274 (3d Cir. 2011)**
https://www2.ca3.uscourts.gov/opinarch/123352np.pdf

**In re USGen New England, Inc., 319 B.R. 309 (Bankr. D. Del. 2005)**
chromeextension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.govinfo.gov/content/pkg/USCOURTS-mdb-0_05-ap-01958/pdf/USCOURTS-mdb-0_05-ap-01958-0.pdf

**SEC v. Yang, No. 12-cv-2473, 2014 WL 1303457 (N.D. Ill. Mar. 31, 2014)**
https://www.sec.gov/files/litigation/apdocuments/3-15928-event-20.pdf

# EXHIBIT A

**Asset Purchase Agreement for Team AI Software**

# EXHIBIT B

**Letter from MJM to Debtor from July 16, 2025**

**Earl Takefman**
851 NE 1st Ave., Suite 2710
Miami, FL 33132

9589 0710 5270 3199 2318 87

Retail  
RDC 99    19801    $8.

Delaware Bankruptcy Court
824 North Market St.
6th Floor, Courtroom #
Wilmington, DE 19801

Attn: Court Clerk, Case #25-11280-KBO

Case 25-11280-KBO    Doc 343    Filed 11/06/25    Page 15 of 15