**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| EARL TAKEFMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 25-1505-CFC-CJB |
| | ) | |
| ROBERT CORLISS, SR., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

Before the Court in this bankruptcy-related action is Defendants A.J. Martinez ("Martinez"), Ghost Tree Partners, LP ("Ghost Tree") and Mark Fox's ("Fox," and collectively, the "Purchaser Defendants") motion to dismiss, filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ("Motion"). (D.I. 22) Plaintiff Earl Takefman ("Plaintiff") opposes the Motion. For the reasons set forth below, the Court recommends that the Purchaser Defendants'[1] Motion be GRANTED.

## I. BACKGROUND

### A. Factual Background

The parties are well versed in the relevant facts of the case; thus, in this Section the Court will briefly set out only certain basic background facts relevant to the resolution of the Motion. Additional relevant facts may also be cited in Section II.B below.

This action relates to a case (the "bankruptcy case") in the United States Bankruptcy Court for the District of Delaware, which was presided over by Chief United States Bankruptcy

---

[1] When the Motion was originally filed, another Defendant, Serengeti Asset Management ("Serengeti") also joined the filing. (D.I. 22) Plaintiff later dismissed all claims against Serengeti. (D.I. 91)

Judge Karen B. Owens (the "Bankruptcy Court"). *See In re: My Job Matcher, Inc.*, Case No. 25-11280 ("*In re: My Job Matcher, Inc.*") (Bankr. D. Del.). The debtors in the bankruptcy case were a company called My Job Matcher, Inc. and certain of its affiliates (hereafter collectively referred to as the "Debtors"). *See In re: My Job Matcher, Inc.*, D.I. 302 at 1 & n.1 (Bankr. D. Del. Oct. 6, 2025) ("Sale Order"). The Debtors filed a Chapter 11 voluntary petition ("petition") for bankruptcy—thus initiating the bankruptcy case—on July 6, 2025. *See In re: My Job Matcher, Inc.*, D.I. 1 (Bankr. D. Del. July 6, 2025).

Along with the filing of their bankruptcy petition, the Debtors attached a supporting Declaration (the "Corliss Declaration") from Richard Corliss ("Corliss"); Corliss is the Chief Executive Officer ("CEO") of Debtors. (D.I. 1 at 8, at ¶ 11; *id.* at 10, at ¶ 25; *id.*, ex. B) Among the subjects discussed in the Corliss Declaration was a group of certain intellectual property assets that are particularly relevant to the instant case; these will be referred to herein as the "Intellectual Property Assets." In the Corliss Declaration, Corliss stated that in September 2023, an affiliate of the Debtors known as Job.com-Team.ai Inc. had purchased the stock of an unrelated, third party company called Team.AI Corp (the "TeamAI Transaction"). (D.I. 1, ex. B at ¶ 14) According to Corliss, Team.AI Corp had developed the Intellectual Property Assets, and following the TeamAI Transaction, certain Debtors worked to further develop this technology with the former leadership team at Team.AI Corp. (*Id.* at ¶¶ 14-15) The Corliss Declaration further stated that "[u]pon information and belief, following the closing of the TeamAI Transaction, . . . Job.com-Team.ai. Inc. transferred ownership and control of the [Intellectual Property Assets] to Debtor Job.com and certain of the other Debtors[.]" (*Id.* at ¶ 15)

Plaintiff, a Florida citizen, is a creditor by assignment of a company called MJM Tech Limited ("MJM"), which is the Debtors' parent company. (D.I. 1 at 7-8, at ¶¶ 1, 5-10; D.I. 72 at

2) He alleges that *MJM* purchased the Intellectual Property Assets in 2023, and that *MJM* (not Debtors) owned the assets as of the time of the filing of the bankruptcy proceeding. (D.I. 1 at 10, at ¶¶ 24-25) Relatedly, Plaintiff alleges that when Corliss asserted in the Corliss Declaration that *Debtors* owned the Intellectual Property Assets, those were false statements. (*Id*. at 11, at ¶ 26; *id*. at 13 at ¶ 42)

Serengeti and Ghost Tree were pre-petition secured lenders to the Debtors; Martinez is a Partner and Chief Legal Officer at Serengeti and Fox is Managing Partner at Ghost Tree. (D.I. 1 at 9, at ¶¶ 17-20; *see also* D.I. 72 at 4) Additional Defendants that Plaintiff has also sued in in this case are: (1) Corliss (Debtors' former CEO); (2) Corliss Moore & Associates, LLC (a company hired to manage Debtors by its secured lenders); (3) Mark Guest (an employee of Debtors); (4) Jeffrey R. Waxman ("Waxman") (lead attorney for Debtors in the bankruptcy case); (5) Carl N. Kunz, III ("Kunz") (also counsel for Debtors in that case); (6) Morris James LLP (the law firm that employs Waxman and Kunz); (7) MJM (the company that Plaintiff alleges owns the Intellectual Property Assets); (8) Paul Sloyan (the former CEO of Debtors and the current CEO of MJM); and (9) Arran Stewart (an officer and director of MJM). (D.I. 1 at 8-10, at ¶¶ 11-16, 21-23)

During the bankruptcy case, Plaintiff participated in a hearing relating to the bankruptcy sales process. (D.I. 25, ex. 4) During that hearing, Plaintiff pressed certain objections to the sales marketing process and indicated disagreement with the content of the Corliss Declaration. (*Id*. at 14-24) The Bankruptcy Court ultimately advised Plaintiff that if he had objections to the sales process, he should participate in pre-sale discovery efforts, and that he could lodge any objections at a future Sale Hearing (i.e., the hearing at which any sale offer would be presented for the Bankruptcy Court's approval). (*Id.*)

In conjunction with the bankruptcy case, the Debtors later entered into an Asset Purchase Agreement ("APA") to sell a number of assets, including the Intellectual Property Assets, to a buyer—a company named Job.com Acquisition Co., LLC (the "Buyer"). (Sale Order, ex. A)[2] The Bankruptcy Court then held a Sale Hearing on September 29, 2025. (D.I. 25, ex. 5); *In re: My Job Matcher, Inc.*, D.I. 284 (Bankr. D. Del. Sep. 29, 2025). During the Sale Hearing, the Corliss Declaration was admitted into the record (without objection), and other evidence meant to further substantiate the assertion that Debtors owned the Intellectual Property Assets was also presented by proffer and admitted (without objection). (D.I. 25, ex. 5 at 46-50) Plaintiff was present at the Sale Hearing. *In re: My Job Matcher, Inc.*, D.I. 284 (Bankr. D. Del. Sep. 29, 2025); (D.I. 25, ex. 6 at 37).

On October 6, 2025, the Bankruptcy Court entered the Sale Order, pursuant to, *inter alia*, 11 U.S.C. § 363 ("Section 363") of the U.S. Bankruptcy Code. (Sale Order at 5, at ¶ E; *id.* at 18, at ¶ 9) Among other things, the Sale Order stated that "[t]he Debtors have adequately demonstrated that the Estates are the sole and lawful owners of the Purchased Assets, including but not limited to all of the Debtors' intellectual property [i.e., including the Intellectual Property Assets.]" (Sale Order at 18, at ¶ 8; *see also* D.I. 1 at 13, at ¶ 42) The Sale Order also ordered that: (1) the transfer of the Purchased Assets to the Buyer "shall constitute legal, valid, binding, and effective transfers of such Purchased Assets and . . . shall be free and clear of all Liens, Claims, encumbrances, and other interests of any kind or nature whatsoever"; (2) any person holding any type of claim in any Purchased Assets were "forever barred, estopped, and

[2] The Buyer is apparently an affiliate of the Purchaser Defendants, jointly formed by Serengeti and Ghost Tree; through the Buyer, Serengeti and Ghost Tree agreed to credit bid their debt in exchange for Debtor's assets. (D.I. 72 at 2, 4 (citing Sale Order at 8, at ¶ J))

permanently enjoined from asserting against the Buyer [and its] Affiliates" a claim concerning those assets; and (3) the Buyer had purchased the assets at issue "in good faith[.]" (Sale Order at 18, at ¶ 9; *id.* at 23, at ¶ 22; *id.* at 25, at ¶ 26)

After the Sale Order was entered, Plaintiff filed a motion in the bankruptcy case seeking leave to file a motion for relief from the Sale Order (the "motion for leave to file"). *In re: My Job Matcher, Inc.*, D.I. 343 (Bankr. D. Del. Nov. 6, 2025). On November 25, 2025, the Bankruptcy Court convened a videoconference hearing to discuss procedural issues regarding the motion for leave to file; the Court had previously scheduled a further hearing on December 12, 2025 to, *inter alia*, argue that motion. *In re: My Job Matcher, Inc.*, D.I. 383 (Bankr. D. Del. Nov. 25, 2025); (D.I. 25, ex. 6 at 8-10). However, during the videoconference hearing, Plaintiff informed the Bankruptcy Court that, were his motion for leave to be granted, he would never agree to appear in person in the Bankruptcy Court to actually prosecute his motion for relief from the Sale Order. (D.I. 25, ex. 6 at 22-30) In light of this, Plaintiff and the Bankruptcy Court agreed that Plaintiff should withdraw the motion for leave—since the Bankruptcy Court explained that it would, in fact, have required Plaintiff to appear in person for that purpose. (*Id.*) As a result, on December 3, 2025, the Bankruptcy Court entered an order canceling the December 12, 2025 hearing on the motion for leave. (*Id.*, ex. 7)

### B. Procedural Background

Two weeks later, on December 15, 2025, Plaintiff filed his Complaint in this case. (D.I. 1) This case was referred to the Court on January 16, 2026 by Chief United States District Judge Colm F. Connolly to resolve all pre-trial matters up to and including expert discovery matters. (D.I. 43)

The Purchaser Defendants filed the instant Motion on January 12, 2026. (D.I. 22) In part due to a dispute over Plaintiff's request for an extension of time to respond to the Motion, and in part due to the presence of other, related disputes between the parties to this action, briefing on the Motion did not conclude until May 8, 2026. (D.I. 67; D.I. 90)[3]

## II. DISCUSSION

In his Complaint, Plaintiff brings various claims against what are now 12 remaining Defendants—three of which are the Purchaser Defendants. (D.I. 1) More specifically, as relating to the movants here (i.e., the Purchaser Defendants), Plaintiff brings claims of civil conspiracy, fraud, aiding and abetting fraud, fraud on the court, negligent misrepresentation and unjust enrichment. (*Id.* at 3 (explaining that the Purchaser Defendants are part of a group that Plaintiff identifies as the "Corliss Defendants"); *id*. at 15-18, at ¶¶ 39-61 (listing out the claims brought against the "Corliss Defendants")) With their Motion, Defendants put forward various reasons as to why some and/or all of the claims asserted against them should be dismissed. (D.I. 72 at 6-17) In the instant Report and Recommendation, the Court need only address one of those arguments: i.e., that all claims against the Purchaser Defendants should be dismissed for lack of subject matter jurisdiction, because they amount to a collateral attack on the Sale Order issued by the Bankruptcy Court. (*Id*. at 6-8; D.I. 90 at 2-4)

---

[3] On May 12, 2026, Plaintiff filed a motion seeking leave to file a sur-reply brief relating to *inter alia*, the instant Motion (the "motion for leave to file sur-reply"). (D.I. 95) To the extent that the motion for leave to file sur-reply relates to the subject matter of this Report and Recommendation, (*id*. at 3), it is DENIED, because in their reply brief, the Purchaser Defendants were either properly reiterating arguments they made in their opening brief or responding directly to arguments that Plaintiff made in his answering brief. (D.I. 107 at 2-3) Thus, no sur-reply brief on this subject matter is warranted.

Below, the Court will first set out the relevant standard of review as to this aspect of the Motion. Thereafter, it will address the merits, explaining why it concludes that dismissal is appropriate as to the "collateral attack" argument.

**A. Standard of Review**

When a party seeks dismissal of a federal civil lawsuit on the ground that the suit amounts to an improper collateral attack on another court's order or judgment, this is a challenge premised on the assertion that the reviewing court lacks subject matter jurisdiction—i.e., one made pursuant to Rule 12(b)(1). *See Republic Bldg. Co. Inc. v. Charter Twp. of Clinton*, Case No. 21-CV-12864, 2022 WL 19040488, at *2 & n.1 (E.D. Mich. Sep. 22, 2022); *Nova Cas. Co. v. Cattle Town Feeders, Ltd.*, 2:17-CV-122-D-BR, 2019 WL 2539207, at *2 (N.D. Tex. Mar. 29, 2019), *report and recommendation adopted*, 2019 WL 5256864 (N.D. Tex. Oct. 15, 2019); *O'Burn v. Shapp*, 70 F.R.D. 549, 553 (E.D. Pa. 1976). Motions brought pursuant to Rule 12(b)(1) may present either a facial or a factual challenge to the Court's subject matter jurisdiction. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); *Enhanced Sec. Research, LLC v. Juniper Networks, Inc.*, C.A. No. 09-871-JJF, 2010 WL 2898298, at *2 (D. Del. July 20, 2010).

With respect to a factual challenge, "the Court may consider evidence outside the pleadings . . . including affidavits, depositions, and testimony," in order "to resolve factual issues bearing on jurisdiction." *Enhanced Sec. Research*, 2010 WL 2898298, at *2 (citing *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997) (additional internal citation omitted). Moreover, in reviewing such a challenge, "the presumption of truthfulness does not attach to the allegations of the complaint." *Id.* (citing *Mortensen*, 549 F.2d at 891). With regard to a facial attack, "the

Court may only consider the allegations of the complaint, and documents referenced therein, in the light most favorable to the plaintiff." *Id*. (internal citation omitted).[4]

"Once the Court's subject matter jurisdiction . . . is challenged, the plaintiff 'must bear the burden of persuasion' and establish that subject matter jurisdiction exists." *St. Clair Intell. Prop. Consultants, Inc. v. Palm, Inc.*, Civil Action No. 06-404-JJF-LPS, 2009 WL 1220546, at *3 (D. Del. May 4, 2009) (quoting *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406 (3d Cir. 1991)).

**B. The Purchaser Defendants' Motion Should be Granted Due to Lack of Subject Matter Jurisdiction**

If a plaintiff in a district court proceeding is seeking to re-litigate an issue previously decided in a separate action, the district court lacks subject matter jurisdiction to take up that type of collateral attack on another court's order or judgment. *See Pondexter v. Pennsylvania Hum. Rels. Comm'n*, 556 F. App'x 129, 131-32 (3d Cir. 2014); *In re Christ Hosp.*, 502 B.R. 158, 177 (Bankr. D.N.J. 2013), *aff'd*, Civil Action No. 14–472 (ES), 2014 WL 4613316 (D.N.J. Sep. 12, 2014); *Slawek v. Guiliano*, No. CIV.A.93-6771, 1994 WL 551523, at *2 (E.D. Pa. Oct. 6, 1994). "Even [where] an action has an independent purpose and contemplates some other relief, it is a collateral attack if it must in some fashion overrule a previous judgment." *Barnard v.*

---

[4] The Court need not decide whether the Motion presents a facial or factual challenge with regard to the "collateral attack" issue. That is because even were the Motion to be a facial challenge, assessment of the arguments at issue would implicate at most (in addition to the allegations in the Complaint and the exhibits attached thereto): (1) a review of the Sale Order; and (2) taking notice of the content of certain filings made in the Bankruptcy Court or of certain public hearings that occurred before that Court. The Sale Order itself is referenced in the Complaint. (D.I. 1 at 13, at ¶ 42) And the Court can also take judicial notice of the Sale Order's content and the occurrence of certain hearings in the Bankruptcy Court. *See Constellation Servs. Int'l, Inc. v. Anderson*, C.A. No. 23-762-GBW-LDH, 2025 WL 2174700, at *3 n.1 (D. Del. July 31, 2025), *report and recommendation adopted*, 2025 WL 2432588 (D. Del. Aug. 22, 2025); *Miller v. Wellpath*, CIVIL ACTION No. 4:23-cv-00282, 2025 WL 4236569, at *6 (M.D. Pa. Dec. 3, 2025), *report and recommendation adopted*, 2026 WL 450396 (M.D. Pa. Feb. 17, 2026).

*Verizon Commc'ns, Inc.*, Civil Action No. 10-1304, 2011 WL 294027, at *8 n.21 (E.D. Pa. Jan. 31, 2011) (alteration in original) (internal quotation marks and citation omitted); *see also, e.g.*, *In re Hawkeye Ent., LLC*, 675 B.R. 595, 612 (Bankr. C.D. Cal. 2025).

As was noted above, a key portion of the Bankruptcy Court's Sale Order was the Court's finding in paragraph 8 that "[t]he Debtors have adequately demonstrated that the Estates are the sole and lawful owners of the Purchased Assets, including but not limited to all of the Debtors' intellectual property." (Sale Order at 18, at ¶ 8) The Bankruptcy Court came to this conclusion after considering multiple pieces of evidence (including the Corliss Declaration) that Debtors presented at the Sale Hearing, all of which were meant to establish that Debtors did in fact own the Intellectual Property Assets. *See supra* at 4. Another key portion of the Sale Order was the Bankruptcy Court's conclusion that the Buyer—an affiliate of the Purchaser Defendants—undertook the transaction in good faith. (Sale Order at 25, at ¶ 26)

Yet now, in this (different) civil action, the gravamen of Plaintiff's claims against the Purchaser Defendants and other Defendants is that: (1) Debtors did *not*, in fact, own the Intellectual Property Assets at the time of the Sale Order—instead, the assets were then rightly owned by MJM; (2) Corliss' statements in the Corliss Declaration to the contrary were "false"; (3) the Purchaser Defendants knew all this, but they ignored or concealed MJM's ownership; (4) the Bankruptcy Court wrongly relied on the "false sworn" Corliss Declaration to find that Debtors owned the Intellectual Property Assets, and wrongly awarded those assets to the Buyer—meaning that today, the Sale Order amounts to nothing more than an "empty judgment"; and (5) Plaintiff suffered damages as a result of the various Defendants' conduct, in that now he cannot collect the debt owed to him by MJM (since the Sale Order found that Debtors, not MJM, owned the valuable Intellectual Property Assets, thus weakening MJM's financial position).

(D.I. 1 at 8, at ¶ 11; *id*. at 10, at ¶¶ 24- 25; *id*. at 13, at ¶¶ 39-43; *id*., at 14, at ¶ 49; *id*. at 15-18 (setting out each of the claims against the Purchaser Defendants—all of which have at their heart an assertion that, *inter alia*, Debtors did not actually own the Intellectual Property Assets, and that the Purchaser Defendants helped conceal that fact)) As such, were Plaintiff to prevail on his claims against the Purchaser Defendants, a factfinder in this case would have to conclude that the Bankruptcy Court's decision in the Sale Order was *wrong*—and that the Debtors did not, in fact, own the Intellectual Property Assets at the relevant time. (D.I. 72 at 7-8; D.I. 90 at 3) The factfinder would also seemingly have to conclude that—contrary to the Sale Order—the Buyer did not purchase those assets in good faith.

Plaintiff's claims thus amount to a collateral attack on the Sale Order. That this is so can be seen by reviewing the decisions of other courts addressing similar facts.

One such exemplary opinion is found in *Regions Bank v. J.R. Oil Co.,* 387 F.3d 721, 731-32 (8th Cir. 2004). In *Regions Bank*, the United States Court of Appeals for the Eighth Circuit concluded that the plaintiff's ("Regions Bank") fraud-related claims were barred as a collateral attack on the previously-issued final judgments of a federal bankruptcy court. 387 F.3d at 731-32. Regions Bank's suit related to allegations that certain collateral assets had been misappropriated from a company called J.R. Oil; Regions Bank was impacted because it had previously provided a loan to J.R. Oil and a related party, and had (resultingly) obtained a lien on the assets/collateral at issue from J.R. Oil. *Id*. at 724-25, 727. However, in earlier related federal bankruptcy proceedings, a bankruptcy court had approved the sale of those same assets from an entity known as Jones Reality to a third party, finding that the transaction at issue was undertaken in good faith. *Id*. at 726.

The *Regions Bank* Court explained that plaintiff's claims were not necessarily barred by the operation of the doctrine of res judicata, because that doctrine would require the plaintiff to have been a party to the relevant bankruptcy proceeding and have participated in the proceeding—and in that case, although the plaintiff had notice of that bankruptcy proceeding and could have intervened in it, it did not participate in the matter. *Id.* at 731. That said, the *Regions Bank* Court explained that:

> Normal principals of res judicata, however, are not necessary for the judgment in the Jones Realty bankruptcy to bar Regions Bank's claims to the extent those claims relate to the sale of the collateral. The bankruptcy court in the Jones Realty bankruptcy approved the sale and found the sale to be in good faith, for fair value, and in the best interest of Jones Realty and its creditors. A bankruptcy sale under [Section] 363, free and clear of all liens, is a judgment that is good as against the world, not merely as against parties to the proceedings. . . . *The judgment, therefore, is shielded from collateral attack not by res judicata, but by virtue of the nature of rights transferred under [Section] 363.*

*Id.* at 731-32 (emphasis added) (citing *In re Met–L–Wood Corp.,* 861 F.2d 1012, 1017 (7th Cir. 1988)); *see In re Christ Hosp.*, 502 B.R. at 177 ("[C]laims, limited to damages allegedly caused by [Defendants'] torts, are nonetheless a collateral attack on bankruptcy court orders and the bankruptcy sale process."); *In re Veg Liquidation, Inc.*, 931 F.3d 730, 737-38 (8th Cir. 2019); *In re Daewoo Motor Co. Ltd., Dealership Litig.*, MDL-1510, 2005 WL 8005218, at *7-8 (M.D. Fla. Jan. 6, 2005). As the United States Court of Appeals for the Seventh Circuit has further explained, "[a] proceeding under [S]ection 363 is an *in rem* proceeding [in that it] transfers property rights"—and so a person is prevented from collaterally attacking a bankruptcy court's Sale Order even if they were not a party to the Sale Hearing or did not have notice of it, since the Sale Order conveys "property rights [that] are rights good against the world, not just against

parties to a judgment or persons with notice of the proceeding." *In re Met–L–Wood Corp.,* 861 F.2d at 1017.

The claims in this case amount to an improper collateral attack on the Bankruptcy Court's Section 363-related Sale Order in part because, as noted above, the "relief requested by the [plaintiff in this case] cannot be granted without effectively overruling key findings in the Sale Order"—including the Bankruptcy Court's express determination that Debtors were the rightful owners of the Intellectual Property Assets. *In re CHC Indus., Inc.*, 389 B.R. 767, 775 (Bankr. M.D. Fla. 2007); *see also In re Veg Liquidation, Inc*., 931 F.3d at 737 (explaining that Section 363 barred a plaintiff's collateral bankruptcy suit, where, in order to sustain the plaintiff's claims, "a court would have to contradict [a bankruptcy court's prior] determinations" made in a sale order). The claims are also rightly understood to be an improper collateral attack because Plaintiff has here sued (for money damages) nearly all of the people or entities involved in facilitating the sale of the Intellectual Property assets from the Debtors to the Buyer—including the Debtors' CEO, other Debtors' employees, the bankruptcy attorneys for the Debtors, and persons or entities (i.e., the Purchaser Defendants) that formed the Buyer. In so doing, Plaintiff is "attempting to unravel the economic effect of the sale[.]" *In re CHC Indus., Inc.*, 389 B.R. at 775; *see also In re Met-L-Wood Corp.*, 861 F.2d at 1018 ("But by seeking heavy damages from the seller, the purchaser, the purchaser's purchaser (Pipin), a law firm involved in the transaction, and the secured creditors that benefited from the sale, the suit is a thinly disguised collateral attack on the judgment confirming the sale. This may be done only by the route provided for collateral attacks on judgments."); *In re Christ Hosp.*, 502 B.R. at 177; *In re Farmland Indus., Inc.*, 376 B.R. 718, 726 (Bankr. W.D. Mo. 2007).

Plaintiff pushes back by arguing that the "collateral attack" doctrine should not be invoked here, because with this suit, he is not facially seeking to unwind the sale of assets made possible by the Sale Order, nor is he moving to modify, rescind or vacate that order. (D.I. 80 at 1, 3-4; *see also* D.I. 1 at 13, at ¶ 41) Instead, Plaintiff suggests, here he is simply alleging that the various Defendants "engaged in wrongful conduct—including misrepresentations and omissions—that caused harm independent of the transfer of title itself." (D.I. 80 at 4)

Plaintiff's rebuttal is not persuasive. As other federal courts have explained, if in order to sustain a plaintiff's claims, a factfinder would have to "contradict . . . determinations" made in a bankruptcy court's sale order (or a similar ruling) issued pursuant to Section 363, then the suit is a collateral attack on that order—even if the plaintiff does not facially seek to overturn the order or seek reversion of title to the property sold via that order. *See, e.g.*, *In re Veg Liquidation, Inc.*, 931 F.3d at 737; *see also In re Met-L-Wood Corp.*, 861 F.2d at 1018; *In re Christ Hosp.*, 502 B.R. at 177; *In re Farmland Indus., Inc.*, 376 B.R. at 726; *In re Daewoo Motor Co. Ltd., Dealership Litig.*, 2005 WL 8005218, at *7.

If Plaintiff had wished to challenge the accuracy of the Corliss Declaration's statement that Debtors owned the Intellectual Property Assets (as well as the other evidence presented to the Bankruptcy Court on that subject), he could have pressed the issue during the Sale Hearing. (D.I. 90 at 4; *see also* D.I. 25, ex. 4 at 24 (the Bankruptcy Court explaining to Plaintiff that "the time to lodge your objection would be at the sale hearing")) Or he could have attempted to obtain relief from the Sale Order thereafter, pursuant to Federal Rule of Civil Procedure 60(b), which, *inter alia*, permits a final judgment to be set aside due to fraud or misrepresentation or misconduct by a party. Fed. R. Civ. P. 60(b); *In re TLFO, LLC*, 572 B.R. 391, 429 (Bankr. S.D. Fla. 2016); *In re Christ Hosp.*, 502 B.R. at 175; *In re CHC Indus., Inc.*, 389 B.R. at 775; *see also*

(D.I. 90 at 4).[5] Yet despite the fact that he made appearances at different hearings in the bankruptcy case, Plaintiff ultimately never objected to the Debtors' assertion of ownership of the Intellectual Property Assets during the Sale Hearing. And he dropped his later Rule 60(b) challenge to the Bankruptcy Court's Sale Order, because he did not wish to travel to Delaware to further press that challenge. (D.I. 90 at 4)

Instead, Plaintiff filed this separate civil suit. But because his claims against the Purchaser Defendants filed in that suit amount to a collateral attack on the finality of the Bankruptcy Court's Sale Order, that order is sheltered from such attack here by virtue of the rights afforded by Section 363. The Court thus concludes that the claims against the Purchaser Defendants must be dismissed due to lack of subject matter jurisdiction.

## III. CONCLUSION

For the foregoing reasons, the Court recommends that the Purchaser Defendants' Motion be GRANTED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right

---

[5] Additionally, if actual fraud occurred in connection with the presentation of evidence to a bankruptcy court, such conduct could also be addressed via criminal investigation and/or prosecution. *Cf. United States v. Mott*, Criminal Action No. 24-77 (MN), 2026 WL 2958605, at *1 (D. Del. Oct. 1, 2026); *United States v. Yao*, Criminal Action No. 06-27 GMS, 2008 WL 511907, at *1 & n.3 (D. Del. Feb. 25, 2008).

to *de novo review* in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the Court's website, http://www.ded.uscourts.gov.

Dated: November 24, 2026

Christopher J. Burke

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE